# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| NASSIR AL-RIFAHE, | Civil No. 10-1971 (JRT/FLN) |
| Plaintiff, | |
| v. | |
| ALEJANDRO MAYORKAS, *Director, U.S. Citizenship and Immigration Services Washington, D.C.*, JANET NAPOLITANO, *Secretary, Department of Homeland Security Washington, D.C.*, and ROBERT MUELLER, *Director, Federal Bureau of Investigation Washington, D.C.*, | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Marc Prokosch, **KARAM & ASSOCIATES**, 2950 Metro Drive, Suite 201, Bloomington, MN 55425, for plaintiff.

Kimberly E. Wiggans and Craig W. Kuhn, **UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION**, Ben Franklin Station, P.O. Box 868, Washington, DC 20044; and Jerry Wilhelm and Lonnie F. Bryan, Assistant United States Attorneys, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendants.

Nassir Al-Rifahe was granted asylum by the United States in 1997. He has sued the Director of the United States Citizenship and Immigration Services ("USCIS"), the Secretary of the Department of Homeland Security ("DHS"), and the Director of the Federal Bureau of Investigations ("FBI") (collectively, "the government" or

"defendants") to compel the disposition of his I-485 application seeking lawful permanent residency ("LPR").

The government has moved to dismiss the action or, in the alternative, for summary judgment. The Court will grant the motion to dismiss Al-Rifahe's claims against the FBI as moot. However, because of the unusually long wait in the adjudication of his application (over thirteen years) and an internal memorandum exempting from inadmissibility the Tier III terrorist organization to which he belonged, the Court will deny defendants' motion in all other regards.

## BACKGROUND

Al-Rifahe is a native and citizen of Iraq. He worked as an Information Officer in the Iraqi National Congress ("INC") and has been a member of the INC since 1992. Al-Rifahe was granted asylum in the United States due to his involvement with the United States Armed Forces in Iraq during Operation Safe Haven. On March 3, 1998, he filed an I-485 application to adjust his status to LPR, that of a "green card" holder.

USCIS has neither granted nor denied plaintiff's application to date. According to the government, Al-Rifahe's application has been pending for **over thirteen years** because the USCIS determined that the INC meets the definition of a Tier III undesignated terrorist organization. (See Decl. of Evelyn M. Martin ¶ 10, June 30, 2010, Docket No. 9.)

In the years following Al-Rifahe's I-485 application, Congress has passed several statutes relevant to USCIS' adjudication of his application. Specifically, according to the government, the USA PATRIOT ACT, Pub. L. No. 107-56, 115 Stat. 272 (2001),

expanded the terrorism-related grounds on which individuals' I-485 applications could be denied, broadened the definition of terrorist activity, and created new categories of terrorist organization including undesignated or "Tier III" terrorist organizations. The REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005), further broadened the bars to asylum. *See Khan v. Holder*, 584 F.3d 773, 779 (9th Cir. 2009).

The Consolidated Appropriations Act ("CAA") of 2008, Pub. L. No. 110-161, 121 Stat. 1844 (2007), enabled the Secretary of Homeland Security, in consultation with the Secretary of State and the Attorney General, to exercise discretionary authority to make exceptions to inadmissibility grounds relating to Tier III organizations. *Panchishak v. U.S. Dept. of Homeland Sec.*, No. 08-6448, 2010 WL 3958772, at *1 (S.D.N.Y. Sept. 29, 2010). Accordingly, while providing "material support" to terrorist organizations, including undesignated Tier III entities, renders an alien inadmissible under 8 U.S.C. § 1182(a)(3)(B)(iv)(VI), the Secretary of Homeland Security retains "sole unreviewable discretion" to exempt individuals from that categorical bar under 8 U.S.C. § 1182(d)(3)(B)(i).

On March 26, 2008, the Deputy Director of USCIS issued a memorandum providing guidance on the adjudication of cases involving terrorism-related inadmissibility. The memorandum instructed adjudicators to withhold adjudication of cases regarding individuals who are inadmissible for activities associated with a Tier III organization. Applications of individuals who might qualify for an exemption under the new discretionary authority under the CAA were, pursuant to the memorandum, to be passed on to appropriate headquarters for eventual consideration.

     Another USCIS policy memorandum of January 23, 2010, however, provided:

> On September 21, 2009, the Secretary of Homeland Security and the Secretary of State, in consultation with each other and the Attorney General, exercised their authority not to apply the terrorist-related grounds of inadmissibility . . . for certain activities and associations involving the Iraqi National Congress . . . . **Aliens whose cases remain on hold solely because they . . . provided material support, was a representative or member of, persuaded others to support, or received military-type training on behalf of the INC . . . may be considered for a discretionary exemption**.

(Ex. A, Docket No. 15.)

     On May 11, 2010, Al-Rifahe[1] filed the instant action seeking to compel the government to find that he is not inadmissible under 8 U.S.C. § 1182(a)(3)(B), to adjudicate his I-485 application, to timely disseminate regulations to implement exemptions regarding terrorism-related inadmissibility grounds, and to apply those guidelines to himself.

     Defendants have filed a motion to dismiss or, in the alternative, for summary judgment on the grounds that Al-Rifahe lacks standing to file suit against the FBI, the Court lacks subject matter jurisdiction to consider Al-Rifahe's claims, and the USCIS' decision to place an indefinite hold on Al-Rifahe's application is both discretionary and has not resulted in an unreasonable delay.

---

[1] On October 5, 2010, the parties stipulated that plaintiff Delphine Bonghan's claims were moot and should be dismissed with prejudice. (Docket Nos. 25, 26.) Accordingly, the instant motion is denied as moot with regard to Bonghan.

## ANALYSIS

### I. MOTION TO DISMISS UNDER RULE 12(b)(1)

The government has moved to dismiss Al-Rifahe's claims against the FBI for lack of subject matter jurisdiction based on his lack of Article III standing. Defendants have also moved to dismiss Al-Rifahe's claims alleging unreasonable delay; according to the government, the Court's jurisdiction over those claims has been statutorily stripped.

#### A. Standard of Review

The Court may dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "Dismissal for lack of subject matter jurisdiction will not be granted lightly. Dismissal is proper, however, when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction." *Wheeler v. St. Louis Sw. Ry.*, 90 F.3d 327, 329 (8th Cir. 1996) (citation omitted). It is the burden of the party asserting jurisdiction to prove by a preponderance of the evidence that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

In resolving a motion to dismiss under Rule 12(b)(1), the Court may consider evidence extrinsic to the complaint without converting the motion into one for summary judgment. *See Osborn v. United States*, 918 F.2d 724, 729–30 (8th Cir. 1990). It may also make "factual determinations about the availability of . . . relief" in considering a jurisdictional challenge under Rule 12(b)(1). *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).

### B.   Claims Against Defendant Mueller

Under Article III, § 2 of the United States Constitution, federal subject matter jurisdiction is limited to actual cases and controversies.  *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000).  A court lacks subject matter jurisdiction over a case in which a plaintiff has not established standing to file suit under Article III.  *See, e.g.*, *Stewart v. City of Red Wing*, 554 F. Supp. 2d 924, 932 n.8 (D. Minn. 2008).  "The constitutional minimum of standing requires an 'injury in fact,' 'a causal connection between the injury and the conduct complained of' and a likelihood 'the injury will be redressed by a favorable decision.'"  *Medalie v. Bayer Corp.*, 510 F.3d 828, 829 (8th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The government asserts that Al-Rifahe lacks standing to sue defendant Robert Mueller, Director of the FBI, because he is not suffering any alleged injury resulting from the FBI's activities.  The actions of the FBI which Al-Rifahe requests this Court to compel – the completion of a "name check" and other background checks – have already been done without judicial intervention.  Al-Rifahe concedes that the claims regarding the FBI no longer pose a live controversy.  Accordingly, Al-Rifahe's claims against defendant Mueller are dismissed as moot.

### C.   Claims Alleging Unreasonable Delay

Defendants argue that two provisions of the Immigration and Nationality Act ("INA") deprive the Court of subject matter jurisdiction over Al-Rifahe's claims alleging unreasonable delay in the adjudication of his I-485 application.

### 1.     8 U.S.C. § 1252(a)(2)(B)(ii)

First, defendants cite 8 U.S.C. § 1252(a)(2)(B)(ii), which provides:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . **any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security**, other than the granting of relief under section 1158(a) of this title.

(emphasis added). Section 1159(b), which governs status adjustment for asylees, falls under the cited subchapter and provides for discretionary authority regarding the ultimate decision of whether or not to adjust the applicant's status. *See* 8 U.S.C. § 1159(b) ("The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's **discretion and under such regulations as the Secretary or the Attorney General may prescribe**, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum . . . .") (emphasis added). Section 1182, governing both terrorism-related inadmissibility and exemptions to such inadmissibility, is also covered by the jurisdiction stripping provision of § 1252(a)(2)(B)(ii).

According to the government, the plain language of § 1252(a)(2)(B)(ii) renders actions leading to the ultimate adjudication of adjustment of status applications – including the decision to place such applications on hold – and the pace of adjudication immune from judicial review. Al-Rifahe, however, contends that that the indefinite hold on his application constitutes "inaction," not a "decision or action" of which § 1252(a)(2)(B)(ii) precludes review.

District courts across the country are divided on this issue. Some have adopted the government's position that § 1252(a)(2)(B)(ii) strips courts of jurisdiction to consider claims that the government has unreasonably delayed the disposition of an I-485 application. *See, e.g.*, *Singh v. Napolitano*, 710 F. Supp. 2d 123, 129-32 (D.D.C. 2010); *Bayolo v. Swacina*, No. 09-21202, 2009 WL 1307957, at *1 (S.D. Fla. May 11, 2009); *Narra v. Gonzalez*, No. 4:06CV3289, 2007 WL 1959255, at *1 (D. Neb. July 3, 2007); *Safadi v. Howard*, 466 F. Supp. 2d 696, 698–700 (E.D. Va. 2006)..

However, "the overwhelming majority of district courts" considering the issue, including courts in the District of Minnesota, have concluded that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar judicial review of claims alleging unreasonable delays in the disposition of I-485 applications of asylees associated with Tier III terrorist organizations. *Hassane v. Holder*, No. C10-314Z, 2010 WL 2425993, at *3 (W.D. Wash. June 11, 2010); *see, e.g.*, *Sultan v. Roark*, No. 2:09-cv-02158, 2010 WL 1992195, at *3 (E.D. Cal. May 13, 2010); *Khan v. Scharfen*, No. 08-1398, 2009 WL 941574, at *4-5 (N.D. Cal. Apr. 6, 2009); *Sawad v. Frazier*, No. 07-1721, 2007 WL 2973833, at *2 (D. Minn. Oct. 9, 2007).

The Court finds that the latter caselaw contains more compelling reasoning. Courts are subject to a "strong presumption in favor of judicial review of administrative action . . . ." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). Federal appellate courts have therefore construed § 1252(a)(2)(B)(ii) narrowly. *See, e.g.*, *Spencer Enters. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003) ("The language of § 1252(a)(2)(B)(ii) . . . refers not to 'discretionary decisions,' . . . but to acts the **authority** for which is **specified** under

the INA to be discretionary.") (emphasis in original); *see also Iddir v. INS.*, 301 F.3d 492, 497 (7th Cir. 2002) (concluding that the use of the term "decision or action" in § 1252(a)(2)(B) "only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections").

The discretionary authority to withhold indefinitely the adjudication of an I-485 application is not specified in the INA. To the contrary, "nothing in the INA addresses, much less specifies, any discretion associated with the pace of adjudication." *Chen v. Heinauer*, No. C07-103RSL, 2007 WL 1468789, at *3 (W.D. Wash. May 18, 2007); *see also Tang v. Chertoff*, 493 F. Supp. 2d 148, 153-54 (D. Mass. 2007) ("Despite the care taken in the INA to specify the **substance** of an adjustment of status decision as discretionary, the **pacing** of such a decision is not so specified.") (emphasis in original). Accordingly, "[w]hile the ultimate decision to grant or deny an application for adjustment of status is unquestionably discretionary, there exists a non-discretionary duty to act on and process the application." *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007). As discussed below, the Administrative Procedures Act ("APA") states that agencies "**within a reasonable time** . . . **shall proceed to conclude a matter presented to it** . . . ." 5 U.S.C. § 555(b) (emphasis added); *see also Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999) ("All other courts addressing this question have held that INS has a non-discretionary duty to process applications for LPR status as well as all other immigration applications.").

The government emphasizes its unreviewable discretionary authority to make determinations regarding inadmissibility exemptions. This authority is not challenged by

Al-Rifahe and is unquestioned by the Court. The issue, however, is whether § 1252(a)(2)(B)(ii) provides blanket cover for USCIS' decision to withhold adjudication of Al-Rifahe's application indefinitely. The Court concludes that it does not.[2] To conclude otherwise would "render toothless all timing restraints," including those imposed by the APA, "amount[ing] to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters." *Duan v. Zamberry*, No. 06-1351, 2007 WL 626116, at *3 (W.D. Pa. Feb. 23, 2007).

### 2.   8 U.S.C. § 1252(g)

The government also alleges that 8 U.S.C. § 1252(g) strips the Court of subject matter jurisdiction over Al-Rifahe's claims of unreasonable delay. Under the statutory sectional heading "judicial review **of orders of removal**," that provision states "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General **to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter**." *Id.* (emphasis added).

According to the government, Al-Rifahe's allegations constitute a "cause or claim . . . arising from the decision or action by the Attorney General . . . [to] adjudicate [his] case[] . . . ." It relies upon *Reno v. American-Arab Anti-Discrimination Committee*, 525

---

[2] Notably, the court in *Safadi*, upon which the government rely heavily, left open the possibility that jurisdiction might exist in cases "where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application." 466 F. Supp. 2d at 700. Al-Rifahe's application has been pending for over thirteen years. The government cites no caselaw in which a court found jurisdiction lacking over an asylee's request to compel adjudication of his I-485 application after a comparable delay.

U.S. 471 (1999), in which the Supreme Court considered the jurisdictional parameters of § 1252(g) in the context of plaintiffs' claims that the government targeted them for deportation based upon their affiliation with a political group. Rejecting "the unexamined assumption that § 1252(g) covers the universe of **deportation claims**[,]" the Court explained that the statute is in fact

> much narrower. The provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "**commence** proceedings, **adjudicate** cases, or **execute** removal orders." There are of course many other decisions or actions that may be part of the deportation process-such as the decisions to open an investigation . . . . It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to **all claims arising from deportation proceedings**.

*Id.* at 482 (only first and last emphases added). Here, even putting aside the likely inapplicability of § 1252(g) to claims of **inaction**, Al-Rifahe's claims do not arise from any of the three discrete actions listed in 1252(g); in fact, they do not arise from a deportation proceeding at all. Al-Rifahe is a lawfully admitted asylee seeking adjudication of his I-485 application. As the Eighth Circuit has concluded, § 1252(g) "has nothing to do" with cases outside the deportation context. *Sabhari v. Reno*, 197 F.3d 938, 942 (8th Cir. 1999) (internal quotation marks omitted). Unsurprisingly, "it appears that every court that has addressed the issue has found that section 1252(g) does not bar judicial review" of claims of unreasonable delay in adjudicating I-485 applications. *Hassane*, 2010 WL 2425993, at *2; *see, e.g.*, *Khan*, 2009 WL 941574, at *3–4. The government's jurisdictional argument regarding § 1252(g) is without merit.

### 3. APA

Having succeeded in establishing the absence of any jurisdictional bar, Al-Rifahe must also put forth an affirmative basis for subject matter jurisdiction. Although the APA does not provide an independent basis for subject matter jurisdiction, "[i]t is black-letter law that federal courts have jurisdiction under [28 U.S.C.] § 1331 [federal question statute] over suits against agencies seeking to enforce provisions of the APA." *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1088 (D. Minn. 2008) (concluding that § 1331 provides jurisdictional basis for APA claim of unreasonable delay in adjudicating naturalization application). The APA compels agencies, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, . . . [to] proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA further provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1).[3]

However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a **discrete** agency action that it is **required to take**." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis original). The APA exempts from judicial oversight claims based on "statutes preclud[ing] judicial review" or "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(1), (2). The government argues that Al-Rifahe's claims are subject to both limitations.

---

[3] Al-Rifahe's complaint also cites the Declaratory Judgment Act, 28 U.S.C. § 2201, but that provision does not provide an independent basis for jurisdiction. *See Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 599 (9th Cir. 1964).

As discussed above, neither § 1252(a)(2)(B)(ii) nor § 1252(g) preclude judicial review, and there is no law according the government limitless discretion with regard to the pace of adjudicating I-485 applications. The government emphasizes the dearth of any explicit time limitation in 8 U.S.C. § 1159, which commits an asylee's claim for status adjustment to agency discretion. As a court in this District previously explained, although § 1159

> addresses the procedures and conditions under which an [asylee] . . . will be regarded as a lawful permanent resident, it does not provide that USCIS can choose not to adjudicate an I-485 application filed pursuant to § 1159. Rather, the court determines that once an adjustment of status application is properly before USCIS, the agency has an affirmative, nondiscretionary duty to process that application. Moreover, although § 1159 and its implementing regulations do not provide for a time frame within which USCIS must adjudicate I-485 applications, the APA requires that the applications be processed in a reasonable time. *See* 5 U.S.C. § 555(b). Therefore, plaintiffs have a clear, indisputable and nondiscretionary right to an adjudication of their applications within a reasonable time.

*Sawad*, 2007 WL 2973833, at *3. The Court will not stray from well-established precedent in this District establishing that the government has a non-discretionary duty to act on I-485 applications under the APA. *See, e.g.*, *Burni v. Frazier*, 545 F. Supp. 2d 894, 903–04 (D. Minn. 2008); *Asrani v. Chertoff*, No. 07-1673, 2007 WL 3521366, at *3 (D. Minn. Nov. 14, 2007); *Haidari v. Frazier*, No. 06-3215, 2006 WL 3544922, at *4 (D. Minn. Dec. 8, 2006).[4]

---

[4] Moreover, some district courts have identified an additional source for the non-discretionary duty to process I-485 applications in 8 C.F.R. § 103.2(b)(18). This provision, titled "Withholding adjudication," sets forth a specific process by which a "district director may authorize withholding adjudication of a visa petition or other application . . . ." It permits withholding adjudication only where the district director determines that (a) "an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where

(Footnote continued on next page.)

## II. MOTION FOR SUMMARY JUDGMENT

Whether the Court has jurisdiction to consider Al-Rifahe's claims, however, is distinct from an inquiry regarding the merit of the claims. The government has moved, in the alternative, for summary judgment on Al-Rifahe's claims of unreasonable delay.

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

(Footnote continued.)

applicable, in connection with the application or petition," and (b) "the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation." The process involves periodic reviews of the investigation. *Id.* In *Dong*, the court concluded that USCIS had "a non-discretionary duty to comply with 8 C.F.R. § 103.2(b)(18) in order to lawfully withhold adjudication." 513 F. Supp. 2d at 1166; *see also Elmalky v. Upchurch*, No. 3:06-CV-2359-B, 2007 WL 944330, at *4 (N.D. Tex. Mar. 28, 2007); *Lin v. Chertoff*, No. CIV-07-382-F, 2007 WL 2301118, at *2 (W.D. Okla. Aug. 8, 2007).

B.  **Claims of Unreasonable Delay**

To determine whether a delay is unreasonable under the APA, courts consider the six factors articulated in *Telecommunications Research and Action Center v. FCC* ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations and quotation marks omitted). "In addition to the *TRAC* factors, the reasonableness of USCIS's delay must also be judged in light of the Government's justifications for the delay in processing Plaintiff's application." *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1145 (D. Ariz. 2008); *see also Sawad*, 2007 WL 2973833, at *5.

With regard to the first and second *TRAC* factors, the APA's general reasonableness standard applies in the absence of an explicit timeline in the relevant statutes. *See Hassane*, 2010 WL 2425993, at *4. The government argues that its delay is governed by a "rule of reason" because it directly results from the CAA and DHS' implementing policy memoranda placing certain applications on hold pending the determination of exemptions for particular Tier III organizations. There is no doubt that the determination of whether Al-Rifahe should be granted an exemption is "a delicate and

difficult task and [USCIS] is striving to maintain consistency and make reasoned decisions . . . ." *Al Karim v. Holder*, No. 08-0671, 2010 WL 1254840, at *3 (D. Colo. March 29, 2010). The Court has no reason to disbelieve the government's assertions that the exemption process is a lengthy one requiring "significant interagency consultation." This issue also weighs on the fourth *TRAC* factor – the effects of expediting delayed action on activities of a higher or competing priority.

However, the Court "cannot ignore the agency's obligation to act on plaintiff's application in a reasonably timely manner." *Id.* Al-Rifahe has been waiting for the government to dispose of his application for well over a decade. **Despite the January 23, 2010 memorandum lifting the hold on applications by INC members such as Al-Rifahe**,[5] his application is nonetheless subject to an indefinite hold, and the government has given no indication of when and whether the hold might be lifted and his application processed. The fact that the government has not instigated deportation proceedings against Al-Rifahe undercuts its arguments regarding national security concerns; providing material support to a terrorist organization is, after all, a removable offense. *See* 8 U.S.C. § 1227(a)(4)(B). As the *Al Karim* court recently reasoned in denying summary judgment to the government and granting summary judgment to an asylee LPR applicant in similar circumstances:

---

[5] For the first time in its reply brief – only after Al-Rifahe cited this memorandum – the government asserted that Al-Rifahe's application remains on hold due to his involvement with the Nasiriya uprising event in 1991, which the government contends requires a separate exemption. The Court will not consider matters first raised in a reply brief. *See Myre v. State of Iowa*, 53 F.3d 199, 201 (8th Cir. 1995); D. Minn. L.R. 7.1(b)(3). Moreover, this fact would not change the Court's analysis, given the indefinite hold on Al-Rifahe's application.

> That classification of the Dawa party [a Tier III terrorist organization to which plaintiff belonged] **may** change at some indeterminate point in the future does not justify leaving plaintiff's application in an indefinite state of limbo. Defendants provide no reason why plaintiff's application cannot be adjudicated immediately, subject to future re-opening and review when and if USCIS policies regarding the Dawa party change. Under these circumstances, I simply cannot deem the indefinite delay in this case to be reasonable.

2010 WL 1254840, at *3 (emphasis in original); *see also Kashkool*, 553 F. Supp. 2d at 1144 ("The lack of a specific timetable does not mean that USCIS can take an infinite amount of time to process Plaintiff's adjustment of status application.").[6]

The third and fifth *TRAC* factors also seem to weigh in Al-Rifahe's favor.[7] "[D]elay in this arena is less tolerable given that human health and welfare are at stake." *Singh v. Still*, 470 F. Supp. 2d 1064, 1069 (N.D. Cal. 2007) (granting summary judgment to asylee on his claim of unreasonable delay in adjudicating his I-485 application). The government argues that the delay in adjudicating Al-Rifahe's application is actually in his own best interest. If his application were reviewed today, according to the government, it would likely be denied. As in *Al Karim*, Al-Rifahe undoubtedly "understands that his application may be denied, but the consequences of the indefinite and unreasonable delay in adjudication of his application are assuredly equally as negative." *Al Karim*, 2010 WL

---

[6] In addition, as discussed above, some courts have concluded that 8 C.F.R. § 103.2(b)(18) imposes upon the government particular timelines and procedures relating to the withholding of adjudication, including a twice-annual review of the determination to withhold. The government has presented no evidence of its compliance with these self-imposed limitations on withholding. *See Han Cao v. Upchurch*, 496 F. Supp. 2d 569, 577 (E.D. Pa. 2007) (granting applicant's motion for summary judgment regarding unreasonable delay).

[7] As to the sixth *TRAC* factor, there is no evidence of any impropriety behind the delays, but the Court need not find any in determining whether the delay is unreasonable under the APA.

1254840, at *4 (footnote omitted). As alleged in the complaint, the delay has infringed upon Al-Rifahe's peace of mind, as well as the benefits, rights, and protections available to him. Several negative consequences of the delay – such as travel restrictions and the delay of Al-Rifahe's potential ability to obtain citizenship – are implicit limitations in the statutory scheme.

Moreover, courts in this District and elsewhere consistently decline to conclude that an application delay is not unreasonable as a matter of law because unreasonableness is a fact reliant inquiry. *See, e.g.*, *Ali*, 575 F. Supp. 2d at 1095 (concluding that "[w]hether [a] delay [of over two years in adjudicating an application for naturalization] is reasonable or not – that is, whether [US]CIS has violated the APA – is a fact-intensive question."); *see also Yu*, 36 F. Supp. 2d at 935.[8]

This case is distinguishable from *Debba v. Heinauer*, 366 Fed. Appx. 696 (8th Cir. 2010) (unpublished per curiam), cited by the government, in which the Eighth Circuit affirmed a district court's grant of summary judgment to the government on claims by an asylee that the eight-plus year delay in adjudicating his I-485 application was unreasonable under the APA. The Eighth Circuit explicitly declined to decide "whether a case of extreme delay by the relevant federal agency could amount to a 'failure to act,' that would give the district court authority under the APA to compel agency action

---

[8] Indeed, many courts grant summary judgment to **applicants**, concluding that delays in processing I-485 applications are unreasonable as a matter of law. *See, e.g.*, *Han Cao*, 496 F. Supp. 2d at 577 (four year delay presumptively unreasonable); *Liu v. Chertoff*, No. CV-06-1682-ST, 2007 WL 2435157, at *11 (D. Or. Aug. 29, 2007) (over three year delay unreasonable); *Elkhatib v. Butler*, No. 04-22407-CIV, 2005 WL 5226742, at *2 (S.D. Fla. June 7, 2005) (four year delay unreasonable).

'unlawfully withheld.'" *Id.* at 699 (internal citation omitted). Al-Rifahe's application has been pending for an extraordinarily long time, over thirteen years. In addition, the government's argument regarding the lengthy process of assessing Tier III organizations is severely undermined in Al-Rifahe's case by the January 2010 memorandum determining that applications on hold because of the applicant's association with the INC may be considered for an exemption. The government's assertion that such guidance memoranda are not legally enforceable is irrelevant. The question is whether the government has conclusively shown that its indefinite hold on the adjudication of Al-Rifahe's application is not unreasonable. In these circumstances, it has not.

The Court concludes that the government is not entitled to summary judgment.

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Docket No. 5] is **GRANTED in part** and **DENIED in part** as follows:

1. The motion is **GRANTED** with regard to claims against defendant Robert Mueller, who is dismissed from this action.

2. The motion is **DENIED** in all other regards.

DATED: March 7, 2011  
at Minneapolis, Minnesota.

                                                   s/ John R. Tunheim  
                                                JOHN R. TUNHEIM  
                                                United States District Judge